UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
SYLVIE SCHWERDTFEGER AND MICHEL
LALOUETTE individually and on behalf of all
other persons similarly situated who were employed
by DEMARCHELIER MANAGEMENT, INC d/b/a
DEMARCHELIER RESTAURANT

                            Plaintiffs,

                                                    10-cv-07557(JGK)

    -against-

DEMARCHELIER MANAGEMENT INC. d/b/a
DEMARCHELIER RESTAURANT and/or any
other entities affiliated with, controlling, or
controlled by DEMARCHELIER MANAGEMENT,
INC. and ERIC DEMARCHELIER,

                            Defendants
--------------------------------------------------------x


DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' "MOTION FOR CONDITIONAL CERTIFICATION
AND NOTICE TO THE CLASS"


                                        Robert V. Ferrari
                                        Attorney for Defendants
                                        630 Third Avenue, 16th Floor
                                        New York, New York 10017

## Table of Contents

PRELIMINARY STATEMENT .............................................................................1

BACKGROUND .............................................................................................1

    I.      PROCEDURAL HISTORY ...........................................................1

    II.     RELEVANT FACTS ....................................................................2

ARGUMENT ................................................................................................3

POINT 1: THE DEFENDANTS WERE ENTITLED TO A "TIP CREDIT" AND
RIGHTFULLY CALCULATED THE MINIMUM WAGES PAID TO PLAINTIFFS.
THE EMPLOYEES PLAINTIFFS REFERRED TO AS "MANAGERS" WHO
BENEFITTED IN PART FROM THE TIP POOL WERE MAITRE D'S WHO LACKED
THE REQUISITE MANAGERIAL AUTHORITY TO BE CONSIDERED
"EMPLOYERS" PURSUANT TO THE FAIR LABOR STANDARDS ACT .........................3

POINT II. PLAINTIFFS FAIL TO SUFFICIENTLY REPRESENT THE PUTATIVE
MEMBERS OF THE CLASS THAT WERE EMPLOYED IN THE KITCHEN AS
THERE IS NO SHOWING THE MEMBERS OF THE KITCHEN STAFF WERE
VICTIMS OF A COMMON PLAN OR SCHEME WHATSOEVER.......................................7

POINT III. PLAINTIFFS FAIL TO SUFFICIENTLY REPRESENT THE PUTATIVE
MEMBERS OF THE CLASS THAT WERE EMPLOYED AS BUSSERS, RUNNERS
OR BARTENDERS AS ANY BENEFIT FROM THE TIP POOL TO THE MAITRE D'
OCCURRED AFTER THE THESE EMPLOYEES HAD ALREADY RECEIVED
THEIR DUE TIPS ......................................................................................10

POINT IV. THE ATTORNEYS FOR THE PLAINTIFFS ARE UNQUALIFIED TO
REPRESENT ALL OF THESE PUTATIVE MEMBERS OR EVEN ALL OF THE
PLAINTIFF'S THAT HAVE OFFERED AFFIDAVITS AS THERE IS AN INHERENT
CONFLICT BETWEEN AFFIANTS LALOUETTE AND CLUZEL VERSUS ANY
POTENTIAL MEMBERS WHO DID NOT SERVE AS MAITRE D'S....................................11

POINT V. CERTIFICATION OF THIS CLASS IS IMPROPER AS THE DEFENDANT
IS ENTITLED TO INDIVIDUALIZED DEFENSES AGAINST INDIVIDUAL
PLAINTIFFS WHERE APPROPRIATE ..................................................................................13


POINT VI. SHOULD THE COURT FIND THAT ANY OF THE PROPOSED CLASS
IS TO BE CONDITIONALLY CERTIFIED, THE PLAINTIFF'S PROPOSED NOTICE
MUST BE AMENDED AS IT IS MISLEADING, IT FAILS TO SHOW JUDICIAL
NEUTRALITY AND FAILS TO EQUITABLY REPRESENT THE POSITION OF
THE DEFENDANT ....................................................................................................13

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

*Bah v. Shoe Mania* 2009 No. 08 Civ. 9380 WL 1357223 (S.D.N.Y. May 13, 2009)............15

*Dole v. Continental Cuisine Inc.* 751 F. Supp. 799 (E.D.Ark.1990).....................................4

*Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir. 1984)............................................5

*Epps v. Oak Street Mortgage LLC,* No. 5:04-CV-46-OC-10GRJ, 2006 WL 1460273...........9,12,13
(M.D. Florida May 22, 2006)

*Garcia v. La Revise Assocs. LLC,* No. 08 Civ. 9356, *2011* U.S. Dist. LEXIS 3325 ..............4
(S.D.N.Y. Jan. 13, 2011)

*Herman v. RSR Sec. Sves. Ltd., 172 F.3d 132, 139* (2nd Cir. 1999)...........................................5

*Hoffman-LaRoche Inc v. Sperling*, 493 US 165, 174 (1989).....................................................14

*Iglesias-Mendoza v. La Belle Farm Inc.* 239 F.R.D. 363, 367 (S.D.N.Y. 2007)......................3,7

*Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294, 301 (6th Cir.1998).................4

*Martin v. Tangos Restaurant*, 969 F.2d 1319, 1325 (1st Cir. 1992)........................................12

*Patra Bonham and Ann Riordan,v.The Copper Cellar Corporation*, 476 F.Supp. 98..............8
(E.D. Tenn. 1979)

*Ronald D'Anna v. M/A-Com, Inc.* 903 F.Supp.889, 894 (D.Maryland 1995)...........................9

*Rudy v. Consolidated Restaurant Companies, Inc.,* Civil Action No. 3:08-CV-0904-L...........4,5
(BF), 2010 WL 3565418(N.D. Tex. Aug. 18, 2010)

*Severtson v. Phillips Beverage Company*, 137 F.R.D. 264 (D Minn 1999)...............................14

*Strange v. Martin Wade* Case No. 1:09-CV-00316 (S.D. Ohio Sept. 8, 2010)...........................5

### FEDERAL STATUTES

29 U.S.C. § 203 .................................................................................................................3,4,8
29 U.S.C. § 213(a).................................................................................................................12
29 U.S.C. § 216(b) ..............................................................................................................3,7

## PRELIMINARY STATEMENT

Plaintiffs' Motion for Conditional Certification and Notice to the Class (Motion) is legally deficient and should be denied in full. Even under the lenient standards required for conditional certification of a class under the Fair Labor Standards Act (FLSA), the named Plaintiffs, Silvie Schwertfeger and Michel Lalouette fail to show that they are sufficiently similarly situated to the putative class members to represent their interests. In addition, there are too many conflicting interests among the putative class members. Further, the most prominent of the Plaintiffs' claims under the FLSA, that the Defendant restaurant unlawfully benefitted from the pooling of tips by the server staff, is an incorrect application of the law. Their memorandum and supporting affidavits suggest that "managers" unlawfully benefitted from the tip pool and the defendant was therefore not entitled to the tip credit under federal law. Those who benefitted, however, were maitre d's, who are customarily tipped employees as the affidavits from both sides indicate. Because the Plaintiff's most prominent claim under the FLSA fails, and the named Plaintiffs are insufficiently situated to represent the putative Plaintiffs and because there is conflict of interest among the class members, the Court must deny Plaintiffs' Motion.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On October 4, 2010, Plaintiffs filed a complaint against Defendants alleging violations of the FLSA. On October 28, 2010, Defendants filed an answer. On November 15, 2010, Defendants filed an amended answer including the affirmative defense that should the court determine that a maitre d' is not entitled to share in the tip pool, then defendants claim as a set

1

off against any damages awarded to Plaintiff Lalouette, an amount equal to that which Lalouette received from the tip pool while serving as a maitre d'. Plaintiffs served a reply to Defendant's Answer on November 21, 2010.

## II.    RELEVANT FACTS

Eric Demarchelier has been working in restaurants in New York City for 35 years. As President of Demarchelier restaurant, he is the sole employer and supervisor. He was personally responsible for hiring both the named Plaintiffs, Schwerdtfeger and Lalouette, as well as the potential class members Cluzel and Harari. Mr. Demarchelier is responsible for the day to day operation of the restaurant including directing and supervising his employees and ordering supplies as needed.

The dining room or the front of the house and the kitchen or the back of the house are run separately both under the supervision of Mr. Demarchelier. The employees in the front of the house receive payment directly from the restaurant as well as from the tips that are collected from the customers. The employees in the back of the house only receive payment directly from the restaurant.

Demarchelier Restaurant has consistently paid its employees in compliance with both federal and New York State law. The employees of the front and the back of the house have been paid for every hour they have worked and have been paid 1.5 times their normal wage for every hour they have worked in excess of 40 hours in a week.

Although it varies, it has been common in the last ten years for the bartenders, servers, and maitre d's to average approximately 40 hours in one week. (Demarchelier Aff. p. 2,3).

2

The position of maitre d' in the last 10 years has been held by, among others, Phillippe Courtais, Michel Lalouette and Julien Cluzel. The responsibilities of the maitre d' include assisting to prepare the restaurant in the morning, greeting the customers and seating them at their tables, taking drink orders and assisting the servers in their efforts to serve the customers. (Demarchelier Aff. p.3) (Courtais Aff. 1).


ARGUMENT

POINT I

THE COURT SHOULD DENY CERTIFICATION WITH RESPECT TO THE PLAINTIFF'S CLAIM REGARDING THE "TIP CREDIT" AS THE PLAINTIFFS DO NOT MAKE OUT A MODEST FACTUAL SHOWING UNDER THE FLSA THAT MANAGEMENT BENEFITTED FROM THE TIP POOL

The Plaintiff's application for an order permitting court supervised notification to putative class members pursuant to 29 U.S.C. § 216(b) should be denied, as the basis for their most significant claim under the FLSA that the Defendant is not entitled to a "tip credit" is incorrect. Because there has been no violation of the law with respect to the "tip credit", the Plaintiffs have failed to meet their requirement of "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that *violated the law*." *Iglesias-Mendoza, v. La Belle Farm, Inc.* 239 F.R.D. 363, 368 (S.D.N.Y. 2007) *emphasis added*. The Plaintiff's claim that because the so called "managers" benefitted from the tip pool, the Defendant is not entitled to take a tip credit under 29 U.S.C. § 203 *et seq.* and therefore Plaintiffs are entitled to any difference between the statutory minimum wage and the amount they were actually paid by the restaurant less their tips received. No manager, more importantly, no employer at Demarchelier restaurant, however, has ever taken a portion of the tips pooled. At Demarchelier restaurant, there is one owner/ manager/ employer as defined by

3

.

the FLSA in the person of Eric Demarchelier. Any "manager" that Plaintiffs refer to was indeed a "maitre d'" whose responsibilities included preparing the restaurant in the morning, clearing and setting the tables, greeting and seating the customers, taking drink orders, bringing drinks and food to the tables, and generally supervising and assisting the servers as necessary (Demarchelier Aff. p.3; Courtais Aff. p. 1). These maitre d's are customarily tipped employees and rightfully included within the Demarchelier restaurant's tip pool. *Dole v. Continental Cuisine Inc.* 751 F. Supp. 799 (E.D.Ark.1990)

The FLSA permits the distribution of tips received by the restaurant's employees through a tip pooling arrangement. 29 U.S.C.A. § 203(m). *Garcia v. La Revise Assocs. LLC,* No. 08 Civ. 9356, *2011* U.S. Dist. LEXIS 3325 *15 (S.D.N.Y. Jan. 13, 2011) The statute also permits the employer to offset the federally mandated minimum wage of those employees who customarily receive a minimum $30 per month in tips by taking a "tip credit" against that minimum wage provided all the tips are retained by the employee. *id* at 15. "Where an employer takes the tip credit in connection with a tip pooling arrangement, the application of the credit will only be valid so long as the pool includes only those employees who 'customarily and regularly receive tips.' See 29 U.S.C.A. §§ 203(m),203(l) (West 1998). *id* at 15. In determining whether an employee customarily receives tips, the courts commonly look at the employee's level of customer interaction. The greater the level of customer interaction, the more likely they are considered employees who "customarily receive tips." *Rudy v. Consolidated Restaurant Companies, Inc.,* Civil Action No. 3:08-CV-0904-L (BF), 2010 WL 3565418 *3 (N.D. Tex. Aug. 18, 2010). Hosts and hostesses have been determined to be among employees who customarily receive tips, *Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294, 301 (6th Cir.1998), as have captains, bartenders, and banquet coordinators, *Garcia* and maitre d's,

4

*Continental Cuisine Inc.; Strange v. Martin Wade* Case No. 1:09-CV-00316 (S.D. Ohio Sept. 8, 2010); *Rudy. distinguished from: Patra Bonham and Ann Riordan,v.The Copper Cellar Corporation,* 476 F.Supp. 98 (E.D. Tenn. 1979) (kitchen staff does not customarily receive tips). The position of maitre d' at the Demarchelier restaurant was the position of an employee who customarily received tips.

In addition to whether the position is one that customarily receives tips, the court must determine whether the position is held by an employer as defined by the FLSA. There is no exact definition of an employer under the statute but the courts have rather offered guidelines for these determinations. It should be understood that "the designation 'employer' under the FLSA does not automatically accompany supervisory responsibility or the designation 'manager;'" *Rudy* at *5. Rather the individual must "independently exercise control over the work situation." *Rudy* at *5 *citing to Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir. 1984) There must also be "nexus to the protected rights at issue." *Rudy* at *8. The courts reject the position that "any person who has any supervisory duties over other employees, no matter how minimal, becomes an 'employer' within the meaning of the FLSA. *Rudy* at 5. The consequences of defining a particular individual an "employer" under this statute imply that the individual is potentially liable for the alleged violations of the FLSA.

Among the court's guidelines is an "economic reality" test to determine whether an individual is an "employer". *Herman v. RSR Sec. Sves. Ltd., 172 F.3d 132, 139* (2nd Cir. 1999). "Under the "economic reality" test, the relevant factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman* at 139 No one factor is determinitive but rather each

is applied towards the overall determination of whether the individual was in whole or in part responsible for any alleged violations under the FLSA.

The application of the economic reality test to the individuals who held the position of maitre d', including those Plaintiffs that have called themselves "managers" leaves no doubt that these individuals did not hold the requisite supervisory authority to be considered employers as defined by the FLSA. The responsibilities of the employees who held this position at the Demarchelier Restaurant, including Phillippe Courtais, Michelle Lalouette[1] and Julien Cluzel included setting up the restaurant in the morning, setting and clearing tables, taking drink orders, bringing drinks and food to the tables, and assisting the servers in their efforts to serve the customers. (Demarchelier Aff. p.3; Courtais Aff. p.1). The application of every factor leads to the conclusion that the individuals did not have the requisite authority over any of the Plaintiffs alleged harms: (1) There is no indication in the record that any of the three individuals in the position of maitre d' or "manager" had the **authority to hire or fire any fellow employee of the restaurant**. Mr. Courtais specifically denies having that authority (Courtais Aff. p.1) and Mr. Demarchelier specifically states that the final authority to hire and fire any (Demarchelier Aff. p.3); (2) There is nothing in the affidavits from either side which indicates that these individuals had the authority to **supervise or control their fellow employees' work schedules or conditions of employment, (3) determine rates and methods of employment or to (4) maintain the restaurant's employment records.** Whatever supervisory role these individuals took was limited to the smooth running of the floor of the restaurant with their fellow employees and does not even come close to rising to the requisite level of authority of an employer. Mr.

---

[1] Although, in the Complaint (p.3) Mr. Lalouette is identified as having been employed as a waiter, he is identified as both server and a manager in Plaintiffs' Motion (p.2 *et seq*).

Demarchelier was at the restaurant on an almost daily basis and kept the authorities enunciated above to himself. Indeed, in each of the Plaintiff's affidavits there is the same boiler plate language sworn to that "Eric Demarchelier . . . was at the restaurant on almost a daily basis. He told the managers when to hire and fire people and had ultimate control over wages and the restaurant's finances" (Schwerdtfeger Affidavit p. 1; Lalouette Affidavit p. 2; Harari Affidavit p. 1, Cluzel Affidavit p. 2.) To whatever extent he relied on the assistance from his employees, he made the final decision on any of these categories. Given that these individuals served in the capacity of a customarily tipped maitre d', Demarchelier Restaurant was in full compliance with the FLSA in utilizing the tip credit and the class therefore cannot be certified under 29 U.S.C. § 216(b) for these allegations. Since no cognizable claim is demonstrated by Plaintiffs that defendants benefitted from the tip pool and there is no modest factual showing that Defendant has violated the law, this is not a ground for certifying a class.

POINT II

PLAINTIFFS FAIL TO SUFFICIENTLY REPRESENT THE PUTATIVE MEMBERS OF THE CLASS THAT WERE EMPLOYED IN THE KITCHEN AS THERE IS NO SHOWING THE MEMBERS OF THE KITCHEN STAFF WERE VICTIMS OF A COMMON PLAN OR SCHEME WHATSOEVER

The Plaintiffs fail to meet the "modest factual showing" sufficient to indicate that the named plaintiffs, a maitre' d', a server and a bartender are similarly situated to any employee who worked in the kitchen or that they were victims of a common plan or scheme which violates the law as required. *Iglesias-Mendoza v. La Belle Farm Inc.* 239 F.R.D. 363, 367 (S.D.N.Y. 2007). There is simply nothing in the record to give the court the authority to notify the potentially 10 to 15 employees to become involved in this litigation. The facts alleged in all four of the boilerplate affidavits describe the working of the "front of the house." With even a

7

superficial knowledge of the restaurant business, one can understand there is a distinction between the duties, methods of payment and work experiences of the maitre d's, bartenders, and servers in the front of the house, and the cooks and dishwashers in the back of the house.

The most prominent focus of the Plaintiffs' motion is their claim that the restaurant violated the FLSA by utilizing the "tip credit" under 29 U.S.C. § 203 *et seq*. The claim has absolutely nothing to do with the methods of payment of any employee who worked in the back of the house. It is well settled, and it is to the benefit of front of the house employees that employees in the back of the house are not customarily tipped employees and not entitled to benefit by any tip pool. *Patra Bonham and Ann Riordan, v. The Copper Cellar Corporation,* 476 F.Supp. 98 (E.D. Tenn. 1979). While the Defendant's position on the tip credit is clear, to whatever an extent this is an issue in the litigation, any efforts by the Plaintiffs' attorneys to further this claim would in no way be representative of the interests of those putative members from the kitchen.

There is nothing in the boilerplate language of the Plaintiffs' affidavits to suggest there was any harm to any employees in the kitchen. While each of the former employees sets forth facts that they were not paid for every hour they worked, none of them is an employee in the kitchen or back of the house. While each of the affidavits suggest that the individuals know their co-workers were not paid all of their legal wages, a fair reading of these sworn statements would suggest that these "co-workers" only include those in the front of the house. As the identical language in each states "sometimes we would compare our wages to see if we were paid correctly. Also . . . I saw my co-workers pool tips and share this money with managers," (*see* all four affidavits) there is no specific mention of any member of the kitchen staff. Indeed, given that the front of the house and the back of the house are paid differently, with one group

8

receiving tips and the other not, these front of the house employees would only have a basis to compare their wages with fellow front of the house employees. In addition, in the very same paragraph that each of the affiants state they "compared the wages" of their co-workers, they also state they saw these "co-workers pool their tips". It stands to reason that the same co-workers that are pooling their tips - those in the front of the house - are those with whom the affiants compared their wages.

Because there is no specific indication in the record of any member of the kitchen staff being the victim of a common plan or scheme, the court must fulfill its "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation. Furthermore an employer should not be burdened by a frivolous fishing expedition" *Ronald D'Anna v. M/A-Com, Inc.* 903 F.Supp.889, 894 (D.Md. 1995)

Finally, the defendants have the right to a full and fair defense of these actions against it. The defenses the restaurant may employ against the members of the front of the house would be different to defenses against members of the back of the house. Most importantly, the defense against the claims from those in the front of the house would require an examination of involvement in the pooling of tips, while the defense against any member of the kitchen staff would involve solely hourly wages. This class would be unmanageable if it included this entirely different set of employees because a "resolution of their claims would involve an individualized level of inquiry of the claim of the particular plaintiff." *Epps v. Oak Street Mortgage LLC,* No. 5:04-CV-46-OC-10GRJ, 2006 WL 1460273 at *8 (M.D. Florida May 22, 2006).

9

POINT III

PLAINTIFFS FAIL TO SUFFICIENTLY REPRESENT THE PUTATIVE MEMBERS
OF THE CLASS THAT WERE EMPLOYED AS BUSSERS, RUNNERS OR
BARTENDERS AS ANY BENEFIT FROM THE TIP POOL TO THE MAITRE D'
OCCURRED AFTER THE THESE EMPLOYEES HAD ALREADY RECEIVED
THEIR DUE TIPS

The Named Plaintiffs are not sufficiently similarly situated to any bartenders, bussers, or

runners as any alleged violation of the FLSA occurred after the bartenders, bussers and runners

had already received their fair allocation in the tip pool. Indeed three of the four affidavits state

that "[a]fter tipping out certain percentages to the bartender(s), busser(s), and runner(s), the

servers and managers split the remaining tips. (Schwerdtfeger, Lalouette and Cluzel affidavits).

It is clear from this process that no harm came to any of these employees as the maitre d's only

took their portion of the tips from the servers. While the Defendants admit no harm came to the

servers as these maitre d's were customarily tipped employees, by the Plaintiffs' own version of

events, it was only the servers that were harmed by this practice. The fact that the maitre d's took

their portion of the tips after the bartenders, bussers and runners were already allocated their

shares, the bartenders, bussers and runners will have different claims, if any, against the

Defendants than the servers. Perhaps more importantly, the bartenders, bussers and runners may

have different interests in the event there is serious consideration of a settlement.

The bartender plaintiff Harari, by her own admission, was paid $10.00 per hour plus tips.

(Harari Affidavit p.1). If, as she and her fellow Plaintiffs aver, the maitre d's were not

customarily tipped employees, she is still not entitled to any such claim. She did not pool her

tips, and she was paid well above the minimum wage. The Named Plaintiffs will therefore not be

representative of her interests especially in the event of consideration of a settlement. The court

must refuse to conditionally certify the class for bartenders, bussers and runners.

10

POINT IV

THE ATTORNEYS FOR THE PLAINTIFFS ARE UNQUALIFIED TO REPRESENT
ALL OF THESE PUTATIVE MEMBERS OR EVEN ALL OF THE PLAINTIFFS
THAT HAVE OFFERED AFFIDAVITS AS THERE IS AN INHERENT CONFLICT
BETWEEN AFFIANTS LALOUETTE AND CLUZEL VERSUS ANY POTENTIAL
MEMBERS WHO DID NOT SERVE AS MAITRE D'S.

Plaintiff Lalouette is unqualified to represent the interests of the putative members of the

Plaintiffs suggested class under the FLSA or even to be a member of this class. The same is true

for Opt in Plaintiff Cluzel as their interests are in direct conflict with those of the putative

members who served only as waiters. Even as Plaintiffs allege, neither is a victim of a common

plan or scheme to violate their rights under the FLSA while they were working as maitre d's, as

they were each paid greater than the federally mandated minimum wage. Were the court to find

for the Plaintiffs that these maitre d's were not employees who customarily receive tips, the

court would be finding these two Plaintiffs were contributing to the harms suffered by their

fellow Plaintiffs.[2]

Quite simply, the interests of Plaintiffs Lalouette and Cluzel are mutually exclusive to the

interests of Plaintiffs Schwertfeger, Harari and other putative class members who did not work

as a maitre d' at Demarchelier Restaurant. Were the court to find that Lalouette and Cluzel were

receiving a portion of the tips in violation of the FLSA, then the ultimate damages of any servers

working simultaneously will be greater. It will be in the interest of the non-maitre d' class

members to emphasize the evidence of the shifts in which either Lalouette or Cluzel worked as a

maitre-d', either in a settlement conference or ultimately at a trial.

---

[2] It is not clear but the Defendant intends to examine the possibility that if the court's
determination is that these two are "employers" they are jointly liable for any damages.

11

From the perspective of Lalouette and Cluzel, however, it is in their interest to emphasize the evidence of the shifts when they worked as servers, rather than as maitre d's because the greater number of hours they worked as waiters, the greater the damages to which they are entitled under this scenario. Obviously at any trial, the finder of fact will ultimately determine these numbers, however these conflicts will be ever present through any settlement conference and throughout the Plaintiffs' strategic planning for any trial. To be clear, the number of shifts both Lalouette and Cluzel worked as a maitre d' as opposed to a server will be an issue of fact. Indeed the Plaintiffs in their original complaint suggested that Lalouette "worked for the Defendant as a waiter from approximately March 2008 to August 2010 (see Complaint p. 3) while in the present motion, Plaintiffs state that Lalouette "worked as a server and manager for Demarchelier Restaurant." (Lalouette Aff. p.1)

The Defendants' concern is not solely that the Plaintiffs will have the difficulties described but that Defendants will be prejudiced in any efforts to negotiate with Plaintiffs towards a settlement. Part of our efforts towards settlement will involve determining the common interests of the class, this will be significantly more difficult if the class members' interests are in conflict as described. In addition, the Defense against the Plaintiffs who served as maitre d's will be distinct from the defense of those that did not serve as such, and will require a individualized level of inquiry. *see Epps* at *8. Were the court to find for the Plaintiffs on the tip credit issue, the defense will examine the possibility of whether Plaintiffs Lalouette and Cluzel were exempt from coverage under the FLSA "'executive ... capacity' *FLSA* § 13(a)(1), 29 U.S.C. § 213(a)(1) as the supervisor of other waiters." *Martin v. Tangos Restaurant*, 969 F.2d 1319, 1325 (1st Cir. 1992) (Remanded back to trial court to determine if person who supervised other waiters may be considered exempt from the protection of the FLSA).

12

POINT V
## CERTIFICATION OF THIS CLASS IS IMPROPER AS THE DEFENDANT IS ENTITLED TO INDIVIDUALIZED DEFENSES AGAINST INDIVIDUAL PLAINTIFFS WHERE APPROPRIATE

The Defense intends to vigorously oppose all allegations including that the Plaintiffs worked the hours they have stated. Based on information and belief, the defense will explore the following: Plaintiff Harari regularly showed up late to work; Plaintiff Cluzel regularly left during the middle of the day for several hours and was not entitled to any payment for those hours; the Defense will contest whether any of these Plaintiffs actually worked the hours they have stated; each of the Plaintiffs have averred vastly different numbers of hours worked while some have admitted to taking breaks and others have not. These initial examples of individualized inquiry of the Plaintiffs that will be required , in addition to those enunciated above involving the different payment methods of the bartenders versus the servers, the front of the house versus the back of the house, and the ever present issue of the maitre d' plaintiffs versus the non-maitre d' plaintiffs will require so many individualized inquiries virtually eliminating any proposed benefits from economies of scale that may or may not come from a class certification. *see Epps* at \*8 In short this proposed class will be unmanageable for the parties and the court and should not be certified.

POINT VI
## SHOULD THE COURT FIND THAT ANY OF THE PROPOSED CLASS IS TO BE CONDITIONALLY CERTIFIED, THE PLAINTIFF'S PROPOSED NOTICE MUST BE AMENDED AS IT IS MISLEADING, IT FAILS TO SHOW JUDICIAL NEUTRALITY AND FAILS TO EQUITABLY REPRESENT THE POSITION OF THE DEFENDANT

13

Should the court ultimately find against the Defendants and conditionally certify this unmanageable class, the Plaintiffs' proposed notice to putative members must be amended as it is misleading, lacks judicial neutrality, and fails to equitably represent the positions of the Defendant. The court must examine the Plaintiffs' proposed notice keeping in mind that it "must be scrupulous to respect judicial neutrality by avoiding even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche Inc v. Sperling*, 493 US 165, 174 (1989). The court must further keep in mind that it is the Plaintiff who bears the burden that notice is appropriate. see *Severtson v. Phillips Beverage Company*, 137 F.R.D. 264 (D Minn 1999)

### The Notice is Misleading

This notice leads the layperson reader to certain misconceptions each in the favor of the Plaintiff. First, the Plaintiff's proposed notice minimizes any obligations or liabilities of joining in this lawsuit. It is not clear to the reader that the named Plaintiffs will have full control over the action including final decisions regarding settlement or proceeding to trial. The reader must be advised that should he choose to join this lawsuit, he is giving up any individual decision making power to which he would be entitled, if he brought his own suit. In addition, he is subject to any outcome of this lawsuit including a settlement which he may not find favorable, and dismissal which may prevent his bringing his own suit individually. The Defendant proposes the following language in the Plaintiff's proposed notice, just above the headline "FEDERAL LAW CLAIMS":

> Understand that this action will be controlled by the named Plaintiffs
> Schwertfeger and Lalouette, whose interests may not always be consistent
> with yours. These named Plaintiffs will have the ultimate authority to
> settle the case in a manner and amount which you may or may not find
> favorable, or to proceed to trial and risk losing. This action, as all actions

14

> is also subject to dismissal which may preclude you from bringing an action on your own. Should you choose not to join this lawsuit, you remain fully with in your rights to bring an action on your own in which you would have full and final decision making power.

In addition, the potential class members are left to believe there will be no responsibilities on their part should they join this lawsuit - as though they will be able to sign this consent and wait for the inevitable financial reward. These individuals must be made aware that there may be obligations in the form of participation in depositions, responding to detailed questionnaires in writing, testifying at trial and paying litigation costs. *Bah v. Shoe Mania* 2009 No. 08 Civ. 9380 WL 1357223 at *4 (S.D.N.Y. May 13, 2009) The defendant proposes the following language be added to the Notice as a separate paragraph following the paragraph suggested above:

> As a participant in this lawsuit, you may have certain responsibilities including, but not limited to: participating in depositions, responding in writing to detailed questionnaires about your employment at the Demarchelier Restaurant, testifying and being cross examined at trial and paying certain costs associated with the litigation.

### The Defendant's Position is Not Equitably Represented

In the interest of fundamental fairness, any notice to putative members must equitably represent the positions of the defendant. The Defendant proposes adding the following language at the end of the paragraph in the proposed notice which begins "Defendants vigorously deny any wrongdoing . . .":

> In defense of their case, the Defendants will introduce evidence supporting their position that they paid their employees the required amount for the hours they worked and supporting their position that Mr. Demarchelier never benefitted from any tip pooling arrangement.

15

Finally, the Plaintiffs are seeking to certify a class of employees that worked in the restaurant from 2007 through the present. (Motion p. 5) The Plaintiffs, however, intend to send notice to all employees who worked for the Demarchelier Restaurant since 2004. Should the court find for the plaintiffs and certify this unmanageable class and certify it with employees since 2007, there is no support for the position that notice should be sent to any employees who worked before that date.

WHEREFORE, defendants request this Court to deny plaintiffs' motion in its entirety and if this Court grants the motion that the notice should be changed in accordance with Point VI of this memorandum.

Dated: February 25, 2011

Respectfully submitted,

ROBERT V. FERRARI (4599)
Attorney for Defendant
630 Third Avenue, 16th Floor
New York, New York 10017
(212) 972-7040

*Attorneys for Defendants*

To:
Virginia & Ambinder, LLP
By Kara Belofsky, Esq.
Lloyd Ambinder
111 Broadway, Suite 1403
New York, NY 10006
Tel: (212)943-9080
Fax: (212)943-9082

16

and

Jeffrey K. Brown
Leeds, Morelli, and Brown, PC
One Old Country Road - Suite 347
Carle Place, NY 11514-1851
Tel: (516) 873-9550

*Attorneys for Plaintiffs and Putative Class*