UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

SYLVIE SCHWERDTFEGER, ET AL.,

                **Plaintiffs,**

      - against -

DEMARCHELIER MANAGEMENT, INC., ET
AL.,

                **Defendants.**
────────────────────────────────

10 Civ. 7557 (JGK)

<u>MEMORANDUM OPINION AND
ORDER</u>

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Sylvie Schwerdtfeger, Michel Lalouette,
Ayelet Harari, Julien Cluzel, and other putative class members
(collectively the "plaintiffs"), move for this Court to grant a
conditional certification and provide notice to the class
pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"),
29 U.S.C. § 216(b).  The defendants, Demarchelier Management
Inc., Demarchelier Restaurant, and Eric Demarchelier
(collectively the "defendants" or "Demarchelier"), oppose the
motion, arguing that the class should not be conditionally
certified because the plaintiffs' claims fail on the merits, the
plaintiffs do not adequately represent the putative members of
the class, and the attorneys for the plaintiffs are unqualified
to represent all of the putative class members because of
inherent conflicts.

**I.**

The plaintiffs allege that, beginning in 2004, the defendants engaged in a policy and practice of failing to pay minimum wages and overtime compensation and unlawfully withholding tips and gratuities.  The plaintiffs were employed at the defendants' Manhattan restaurant as servers, hosts or hostesses, bartenders, busboys, and dishwashers.

Plaintiff Sylvie Schwerdtfeger worked at the defendants' restaurant as a server from January 2007 through April 2009. (Schwerdtfeger Aff. ¶¶ 2-3.)  Schwerdtfeger typically worked five days a week, working twelve-hour shifts with a one hour break two days a week, and seven and one half-hour shifts the other three days of the week.  (Schwerdtfeger Aff. ¶ 5.) Schwerdtfeger received a wage of approximately $4.65 per hour plus tips.  (Schwerdtfeger Aff. ¶ 4.)

Plaintiff Michel Lalouette worked as a server and manager from approximately March 2008 to August 2010.  (Lalouette Aff. ¶¶ 2-3.)  Lalouette is solely eligible as a plaintiff for the time he worked as a server.  Lalouette typically worked five days a week, working twelve-hour shifts three days a week, and seven and one half-hour shifts the other two days of the week. (Lalouette Aff. ¶ 5.)  Lalouette received approximately $4.60 to $4.65 per hour plus tips when he worked as a server, and

approximately $100 per day plus tips when he worked as a manager.  (Lalouette Aff. ¶ 4.)

Plaintiff Ayelet Harari worked as a bartender from approximately November 2006 to August 2010.  (Harari Aff. ¶¶ 2-3.)  From 2006 to 2008, Harari typically worked five days a week, working from 10:00 a.m. to 12:00 a.m. on each of those five days.  (Harari Aff. ¶ 5.)  Harari's hours changed in 2009, and from 2009 to 2010 he normally worked five days per week, working from 10:30 a.m. to 12:00 a.m. three days a week and from 4:00 p.m. to 12:00 a.m. the other two days of the week.  (Harari Aff. ¶ 5.)[1]  For the entire time that he was employed by the defendants, Harari received approximately $10.00 per hour plus tips.  (Harari Aff. ¶ 4.)

Plaintiff Julien Cluzel worked as a server from June 2003 to 2007, and as a manager from 2007 to November 2009.  (Cluzel Aff. ¶¶ 2-3.)  Cluzel is solely eligible as a plaintiff for the time he worked as a server.  As a server, Cluzel typically worked five days a week, working twelve-hour shifts four days a week, and a seven and one half-hour shift one day of the week, and received approximately $3.00 per hour plus tips.  (Cluzel Aff. ¶¶ 4-5.)  Cluzel started working as a manager in 2007, at which time his job duties included "supervising the restaurant

---

[1] The statement in Harari's affidavit that his shifts beginning in 2009 were 10:30 a.m. to 12:00 p.m. and 4:00 p.m. to 12:00 p.m. is plainly an error given the length of Harari's shifts from 2006 to 2008 and the length of the other plaintiffs' shifts.  (See Harari Aff. ¶ 5.)

staff, addressing customer issues, . . . ordering supplies, [and] carry[ing] out orders given to [him] by Eric Demarchelier . . . ." (Cluzel Aff. ¶ 3.) When he worked as a manager, Cluzel received approximately $10.00 to $20.00 per hour, plus tips. (Cluzel Aff. ¶ 4.)

Each of the above named plaintiffs submitted signed affidavits stating that he or she worked over forty hours per week some weeks, and that he or she did not receive minimum wage for the hours worked or overtime compensation for the hours beyond forty hours worked in a given week. (Schwerdtfeger Aff. ¶¶ 6-7; Lalouette Aff. ¶¶ 6-7; Harari Aff. ¶¶ 6-7; Cluzel Aff. ¶¶ 6-7.) The plaintiffs assert that they were paid according to a set number hours for a "lunch shift," "dinner shift," or "double shift," rather than according to the actual number of hours worked, which were generally more than the set number of hours in each shift. (Schwerdtfeger Aff. ¶ 8; Lalouette Aff. ¶ 8; Harari Aff. ¶ 8; Cluzel Aff. ¶ 8.)

The signed affidavits of each of the above named plaintiffs also state that the managers unlawfully retained a portion of the tips and gratuities of the servers. (Schwerdtfeger Aff. ¶¶ 9-10; Lalouette Aff. ¶¶ 9-11; Harari Aff. ¶¶ 9; Cluzel Aff. ¶¶ 9-11.) The plaintiffs assert that because the managers received tips, the defendants were "ineligible to take a tip credit under 29 U.S.C. § 203 <u>et. sec.</u> and 29 C.F.R. § 531.50 <u>et. sec.</u> and pay

the plaintiffs and the putative class less than minimum wage."
(Pls.' Mem. in Supp. of Mot. for Conditional Certification and
Notice to the Class ("Pls.' Mem.") at 4.)

The plaintiffs now seek an order pursuant to 29 U.S.C. §
216(b) granting conditional certification and authorizing the
plaintiffs to send notice to all prospective members of the
class of the defendants' employees.  The plaintiffs propose that
all current and former employees of Demarchelier Restaurant,
including servers, hosts or hostesses, bartenders, bar-backs,
busboys, runners, dishwashers, cooks, and other similar
restaurant related tasks, are "similarly situated" individuals
who should be included in the conditionally certified class.
(Pls.' Mem. at 5.)  The above named plaintiffs stated in signed
affidavits that they worked with as few as fifteen and as many
as sixty similarly situated employees at the defendants'
restaurant.  (Schwerdtfeger Aff. ¶ 12; Lalouette Aff. ¶ 13;
Harari Aff. ¶ 11; Cluzel Aff. ¶ 13.)  The plaintiffs concede
that managers are not in the class and that they do not seek to
recover for any period of time that any plaintiff worked as a
manager.  The plaintiffs have included a proposed notice to all
prospective members and consent to joinder.  (attached as Exs. E
& F to Pls.' Mem.)

The defendants oppose the plaintiffs' motion, arguing that
the plaintiffs' claims are without merit, that the proposed

putative class members are not "similarly situated" to the plaintiffs, and that inherent conflicts of interest exist amongst the putative class members.  The defendants also argue that, should the Court conditionally certify the proposed class, the plaintiffs' proposed notice must be amended because it is misleading, fails to show judicial neutrality and fails to equitably represent the position of the defendants.

## II.

### A.

Under § 216(b) of the FLSA, employees may maintain actions to recover unpaid wages collectively where the employees are "similarly situated" and give consent in writing "to become . . . a party [to the action] and such consent is filed [with the Court]."  29 U.S.C. § 216(b).  "District courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Klimchak v. Cardrona, Inc., No. 09 Civ. 04311, 2011 WL 1120463, at *4 (E.D.N.Y. Mar. 24, 2011) (internal quotations and alterations omitted) (quoting Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010).  The Second Circuit Court of Appeals has endorsed a two step method of certification in an opt-in collective action under the FLSA.  Myers, 624 F.3d at 554-55.

At the first step, the Court must determine whether it is appropriate to send notice to potential opt-in plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," thus issuing a "conditional certification" of the collective action.  Myers, 624 F.3d at 555; see Gullien v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) ("Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification requirement.").

In exercising its discretion at the conditional certification stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  Cunningham v. Elec. Data Sys. Corp., No. 08 Civ. 10409, 2010 WL 5076703, at *4 (S.D.N.Y. Dec. 13, 2010) (internal citations omitted).  The plaintiffs need only make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 555 (internal quotations and citations omitted).

If the plaintiffs demonstrate that "similarly situated" employees exist, the Court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a "collective action

throughout the discovery process." <u>Cunningham</u>, 2010 WL 5076703, at *5. "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs claims may be dismissed without prejudice." <u>Myers</u>, 624 F.3d at 555.

**B.**

In this case, the plaintiffs have satisfied their minimal burden of showing that similarly situated employees exist. In their affidavits, the plaintiffs articulate FLSA violations that are shared among employees in various positions. Specifically, the affidavits report working more than forty hours per week and not receiving overtime compensation for the additional hours. (Schwerdtfeger Aff. ¶¶ 6-7, 15-16; Lalouette Aff. ¶¶ 6-7, 16-17; Harari Aff. ¶¶ 6-7, 14-15; Cluzel Aff. ¶¶ 6-7, 16-17.) They also report that non-tipped and tipped employees received less than minimum wage per hour, and that managers, who the plaintiffs allege were not entitled to tips, shared tips with tipped employees. (Schwerdtfeger Aff. ¶¶ 4, 7-10, 15-16; Lalouette Aff. ¶¶ 4, 7-11, 16-17; Harari Aff. ¶¶ 4, 7-9, 14-15; Cluzel Aff. ¶¶ 4, 7-11, 16-17.)

C.

The defendants contend that the named plaintiffs and the putative class members are not similarly situated because they performed different functions, and some were entitled to receive tips and gratuities as part of their compensation while others were not.  This, however, does not preclude conditional certification.  All of the plaintiffs claim that they did not receive minimum wage and overtime compensation.  The defendants received a tip credit, and allegedly did not pay tipped employees minimum wage.  The plaintiffs argue that Demarchelier should not have received the tip credit because it improperly retained tips and gratuities by giving the managers a portion of the tips and gratuities as part of their salary.  If the plaintiffs are able to demonstrate that Demarchelier was ineligible to take a tip credit with respect to some employees for any period of time, those employees may be owed payment to the extent they did not receive a minimum wage.  Lujan v. Cabana Mgmt., Inc., No. 10 Civ. 755, 2011 WL 317984, at *4-*5, *12 (E.D.N.Y. Feb. 1, 2011).  The plaintiffs claim relating to the tip credit lays the foundation for the claim that paying the tipped employees less than minimum wage was not justified, and was therefore unlawful.  Ultimately, all of the employees have claims based on the defendants' alleged failure to pay a minimum

wage and overtime compensation, regardless of whether they were tipped or non-tipped employees.

Moreover, the fact that the employees in the putative class performed different functions does not bar conditional certification.  All of the employees who performed different functions were subjected to the same alleged unlawful policy that violated the FLSA.  Courts have found employees to be similarly situated for purposes of conditional certification despite differences in the employees' job functions or the details of their claims.  See e.g., Lujan, 2011 WL 317984, at *10, *14 (granting conditional certification where the proposed putative class included "servers, hosts(esses), bartenders, bar-backs, busboys, runners, dishwashers, and other restaurant related tasks," and both tipped and non-tipped employees.) Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 303, 306-07 (S.D.N.Y. 1998) (Sotomayor, J.) (granting conditional certification to employees at multiple restaurant locations, who collectively held positions as waiters, porters, dishwashers, cooks, back-waiters, bartenders, runners, pizza makers, busboys, and security guards).

**D.**

The defendants also argue that the collective claims should not be conditionally certified because there is a conflict of interest between Lalouette and Cluzel, who were employed as

10

managers as well as servers, and the other putative class members because Lalouette and Cluzel allegedly received tips and other compensation that they should not have received as managers.  Managers are not included in the class, and Lalouette and Cluzel are not eligible to recover damages for the period of time they worked as managers.  Lalouette, Cluzel, and any potential opt-in plaintiffs who worked for Demarchelier as managers and as servers, or in other positions that are included in the class, are not in jeopardy of being responsible for any of the alleged violations, and they stand to benefit to the extent their wages were underpaid because of any improper reduction in wages.  It is well-settled that employees, including managers, cannot be held individually or personally liable for wage and hour violations of the FLSA unless they are considered "employers".  See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("To be held liable under the FLSA, a person must be an "employer. . . .").  A person will generally be considered an "employer" under the FLSA if a person "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Id. (quoting Carter v. Dutchess Comty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  In this case, none of the parties contend that the managers had these

responsibilities.   Because the managers were not "employers" for purposes of the FLSA, there is no basis to believe that the interests of potential class members who also worked as managers will differ from those of employees who never worked as managers.   The purpose of showing that managers received tips as part of their compensation is to establish that the defendants were not entitled to the tip credit, and were therefore required to pay minimum wage to all employees, including tipped employees.   Because those employees who worked as managers would not be liable for receiving tips as part of their salary under the FLSA, their interests do not conflict with members of the class who were at all times tipped employees.   Thus, the conflict alleged by the defendants does not preclude conditional certification.

**E.**

The defendants also argue that employees identified by the plaintiffs as managers were in fact maidtre d's who were entitled to tips and gratuities, and therefore the defendants did not retain any of the tips and gratuities and were entitled to the tip credit.   This is a factual issue that reaches the merits of the plaintiffs' claims and is therefore inappropriate at this stage of the proceeding.   See Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (finding that whether "service captains" are the type of employee that customarily and

regularly receives tips is an issue of fact that cannot be
resolved at the conditional certification stage); see also
Dumitrescue v. Mr. Chow Ent., Ltd., No. 07 Civ. 3601, 2008 WL
2600667, at *5, *7 (S.D.N.Y. June 30, 2008) (granting
conditional certification although the defendants contested the
plaintiffs allegations that managers/maitre d's could not
participate in tip pool.)

<strong>F.</strong>

Finally, the defendants object to conditional certification
on the basis that Demarchelier did not have a common policy or
plan that violated the FLSA.  This also raises a factual issue
that is inappropriate to resolve at this stage of the
proceeding.  The plaintiffs' allegations that they, and
potentially sixty other co-workers, were subjected to FLSA
violations because the defendants failed to pay minimum wage or
overtime compensation, and improperly withheld tips, are
sufficient to satisfy their light burden at this stage of
litigation.  Accordingly, the motion for conditional
certification is granted.

<strong>III.</strong>

The defendants contend that the plaintiff's proposed notice
to the putative class members must be amended because it is

misleading, it fails to show judicial neutrality, and it fails to represent the defendants' position in an equitable way.

**A.**

The defendants argue that the proposed notice is misleading because it "minimizes any obligations or liabilities of joining in the lawsuit."  In order to address this, the defendants suggest that the notice explain that by joining the lawsuit, the employee is "giving up any individual decision making power to which he would be entitled, if he brought his own lawsuit," and that by joining the lawsuit, the employee may have responsibilities such as "participating in depositions, responding in writing to detailed questionnaires . . . testifying and being cross examined at trial and paying certain costs associated with litigation."  (Defs.' Mem. in Opp. to Pls.' Mem. ("Defs.' Mem.") at 14-15.)  The plaintiffs argue that the Proposed Notice "contains neutral, understandable language that does not mislead putative class members," and that the language proposed by the defendants, specifically language concerning the burden of responding in writing to detailed questionnaires and the potential obligation to pay costs, "will serve no purpose other than to confuse putative class members, and create an in terrorem effect."  (Pls.' Reply Mem. At 8-9.)

The Proposed Notice need not be amended.  Courts in this Circuit have generally disapproved of including language

14

indicating burdensome discovery and the possible cost of litigation "given the remote possibility that such costs for absent class members would be other than de minimis, as well as the risk of an in terrorem effect that is disproportionate to the actual likelihood of significant costs." Lujan, 2011 WL 317984, at *11 (quoting Guzman v. VLM, Inc., No. 07 Civ. 1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) (internal quotation marks omitted); see also Garcia v. Pancho Villa's of Hunt. Village, Inc., 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010) (rejecting language stating that "individuals who opt in will be subject to discovery obligations, depositions, [and] trial testimony . . . ."). The defendants' suggested language is not necessary, and would likely intimidate putative class members from opting into the case.

### B.

The defendants also assert that in order for the notice to represent their position fairly, it must include language indicating that they will introduce evidence in support of their position that they paid their employees the required amount for the hours they worked and did not unlawfully retain tips. (Defs.' Mem. at 15.) The Proposed Notice states that the defendants "vigorously deny any wrongdoing and/or liability to plaintiffs or any other past or present employee . . .

Demarchelier Restaurant strongly denies that any employee was underpaid for his or he work at any time."   (Pls.' Mem. Ex. E.) This language adequately puts potential opt-in plaintiffs on notice of, and equitably represents, the defendants' position. The addition of language indicating that the defendants will provide evidence of their position is both unnecessary and potentially misleading, because it is unclear at this stage what evidence the defendants will be able to present.

## c.

Finally, the defendants argue that the Court should prohibit the plaintiffs from sending notice to employees who worked at the defendants' restaurant from 2004 to 2006, because the claims prior to 2007 are time barred under the FLSA.   The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  See 29 U.S.C. § 255(a).  Because the plaintiffs also allege state law claims, which are governed by a six year statute of limitations, this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  There may be a number of employees with both timely FLSA and state law claims, and the total number of potential plaintiffs does not appear to be so large that requiring the defendants to provide information for employees dating back six years would be "unduly burdensome or disruptive to [the] defendant's business operations."  Avila

16

v. Northport Car Wash, Inc., No. 10 Civ. 2211, 2011 WL 833642, at *5 (E.D.N.Y. Mar. 10 2011) (collecting cases); but see Lujan, 2011 WL 317984, at *9; McBeth v. Gabrielli Trucks Sales, Ltd., No. 09 Civ. 4112, 2011 WL 338123, at *3 (E.D.N.Y. Feb. 3, 2011) (collecting cases).  The notice adequately describes that there are claims under New York law and that these claims unlike the FLSA claims, have a six-year statute of limitations.  The responses by any former employees who have potential claims under New York law, but not under the FLSA, may be relevant to a subsequent determination as to whether a class should be certified under New York law.  Given the limited burden on the defendants, it is appropriate to permit the plaintiffs to provide notice to potential opt-in plaintiffs who were employed by the defendants as far back as 2004, even if those plaintiffs' FLSA claims might be time-barred.  See, e.g., Avila, 2011 WL 833642, at *4-*5; Klimchak, 2011 WL 1120463, at *7; Gani v. Guardian Serv. Indus. Inc., No. 10 Civ. 4433, 2011 WL 137844, at *2 (S.D.N.Y. Jan. 13, 2011); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 393 (S.D.N.Y. 2007); Realite, 7 F. Supp. 2d at 308 n.4 (S.D.N.Y. 1998).

### D.

At the argument of the current motion, the parties expressed a willingness to work together to determine if there are any other changes in the notice on which the parties can

agree.  The proposed notice should include a ninety-day period
for response.

## CONCLUSION

The Court has carefully considered all of the parties'
arguments.  To the extent they are not dealt with above, they
are either moot or without merit.  For the reasons stated above,
the plaintiffs' motion for conditional certification of an FLSA
collective action pursuant to § 216(b) of the FLSA, and for
court-authorized notice, is **granted**.  The defendants' request to
amend the Proposed Notice to the putative class is **denied**,
without prejudice to the parties' ability to present any
mutually agreed upon change in the proposed notice.  The Clerk
is directed to close Docket No. 15.  The plaintiffs should
submit a proposed order for the Court approving the proposed
notice within ten days.

**SO ORDERED.**

Dated:     **New York, New York**
           **June 6 , 2011**

                                    6. Koeltl
                                    John G. Koeltl
                              United States District Judge

18